KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215
———
(202) 326-7900
FACSIMILE:
(202) 326-7999

May 15, 2026

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

> Re:   *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC)
> [rel: *Dotdash Meredith Inc. v. Google LLC*, No. 1:25-cv-07194 (PKC); *Insider, Inc. v. Google LLC*, No. 1:25-cv-07409 (PKC); *The Slate Group LLC v. Google LLC*, No. 1:25-cv-07697 (PKC); *CMI Marketing, Inc. v. Google LLC*, No. 1:25-cv-08630 (PKC)]

Dear Judge Castel:

Plaintiffs in the above-captioned cases ("Group 1 Premium Publishers") write in opposition to Defendants Google LLC and Alphabet Inc.'s (collectively, "Google") motion to compel further responses to two interrogatories propounded on the Group 1 Premium Publishers: Google's "Communications Interrogatories" and its "Sponsorship Deal Interrogatories." Group 1 Premium Publishers have responded to both interrogatories, explained their objections, supplemented when appropriate, and were conferring with Google about further supplementation when Google filed its motion. The motion should be denied.

There is no conference scheduled at this time.

I.    **The Court Should Deny Google's Motion To Compel Further Responses to the Communications Interrogatories**

Google's Communications Interrogatories ask each Group 1 Premium Publisher to identify (a) all of their "communications with Google upon which [they] rely for any of [their] claims," including the dates, relevant participants, subject matter, and (b) "all documents related [ ]to" any such communications. The Court should deny Google's motion to compel further supplementation of Group 1 Premium Publishers' responses for two independent reasons: (1) the Communications Interrogatories are improperly broad; and (2) Premium Publishers already have provided Google precisely what it asked for – the identity of and any documents relating to any communications with Google on which they rely to support "any of [their] claims."

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable P. Kevin Castel
May 15, 2026
Page 2

### A. Google's Communications Interrogatories Are Improper

Google's request for any and all communications between itself and Group 1 Premium Publishers – and "all documents related thereto" – that support any of Group 1 Premium Publishers' claims is overbroad. In this District, interrogatories are meant to narrow issues, not to require an adversary to catalogue every piece of evidentiary material that may bear on a claim. *Fishon v. Peloton Interactive, Inc.*, 2021 WL 4124661, at *2 (S.D.N.Y. Sept. 9, 2021); *Silva v. New York City Transit Auth.*, 2022 WL 22961114, at *1 (E.D.N.Y. May 27, 2022) ("Courts generally resist efforts to use contention interrogatories as a vehicle to obtain every fact and piece of evidence a party may wish to offer concerning a given issue at trial."); *Pasternak v. Kim*, 2011 WL 4552389, at *2 (S.D.N.Y. Sept. 28, 2011) (collecting cases). Rule 33(a)(2) likewise recognizes that a court may defer answers to such interrogatories until later in discovery. *See* Fed. R. Civ. P. 33(a)(2); *see also* S.D.N.Y. Local Civ. R. 33.3(c) (reserving contention interrogatories for the conclusion of other discovery unless the Court orders otherwise).

Accordingly, this Court should deny Google's motion to compel further responses to the Communications Interrogatories. The weight of authority in this District makes clear that an interrogatory demanding identification of "all" communications upon which a party relies "for any of" its claims – together with "all documents related thereto" – is precisely the kind of sweeping contention interrogatory that courts routinely decline to enforce in the manner Google demands. *See Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 273 F.R.D. 367, 369 (S.D.N.Y. 2010) (distinguishing between proper contention interrogatories that seek "certain principal or material facts" and improper ones that demand "every fact [and] every piece of evidence" supporting broad allegations); *Thompson v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 2015 WL 753721, at *4 (D. Conn. Feb. 23, 2015) (sustaining overbreadth objection to interrogatory seeking all persons who "oversee, supervise, or have communicated" about a claim). Google's Communications Interrogatories fall on the wrong side of that line.

### B. Group 1 Premium Publishers Adequately Responded to the Communications Interrogatories and Were Willing To Supplement Further

Notwithstanding the overbreadth of the Communications Interrogatories, Group 1 Premium Publishers responded in good faith. Specifically, on February 27, Group 1 Premium Publishers supplemented their responses and identified, by Bates number, communications between Google and themselves that support any of their claims. The remaining details requested in the Communications Interrogatories – the dates, participants, and subject matters of the communications – are identifiable from the face of the documents. *See* Dkt. 1757-20 at 2. That is a proper Rule 33(d) response. *See* Fed. R. Civ. P. 33(d)(1) (only requiring "specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could"). And it is precisely what Google's interrogatories request.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable P. Kevin Castel
May 15, 2026
Page 3

Google now claims (at 3) that the interrogatories relate only to Group 1 Premium Publishers' allegations concerning "misrepresentations by Google to Plaintiffs." But that is not what the Communications Interrogatories request. Google asked for the identity of any communications with Google upon which Premium Publishers rely for "*any* of [their] claims" (emphasis added) – which include antitrust and other claims that do not involve misrepresentations – and "all documents related thereto." Group 1 Premium Publishers repeatedly explained, and Google did not contest, that the Communications Interrogatories "do not ask for documents that support any particular claim," but ask for communications that support any claim. Dkts. 1757-20 at 2; *see also* Dkts. 1757-29 at 2-3; 1757-28 at 1. Indeed, during a meet and confer on April 27, Google disclaimed any argument that the Communications Interrogatories required Group 1 Premium Publishers to tie any identified communication to any particular claim or allegation. Google cannot now demand a response to an interrogatory it never asked. And in all events, an interrogatory asking for "all" evidence that support Group 1 Premium Publishers' misrepresentation claims would be improper for reasons already explained. *See* Part I.A, *supra*.

Proceeding from the inaccurate premise that the Communications Interrogatory seek nothing more than the "precise" communications related to Group 1 Premium Publishers' misrepresentation claims, Google claims (at 1, 5) that it received a "document dump." But the breadth of Group 1 Premium Publishers' responses merely tracks the breadth of Google's own interrogatory, which asked for communications that support "any" claim and "all documents related thereto." *See* Dkts. 1756-15 at 2-5; 1757-20 at 2. Google cannot draft a sweeping interrogatory and then, after receiving a necessarily broad response, rewrite the request in a letter motion. "Plaintiffs should not be 'required to parse through documents that have already been produced to defendants, which defendants are in a position to review themselves, in order to explain the obvious.'" *Fishon*, 2021 WL 4124661, at *1 (quoting *Trib. Co. v. Purcigliotti*, 1997 WL 540810, at *2 (S.D.N.Y. Sept. 3, 1997)).

Google's cited authorities (at 4-5) do not help it. None of those cases concern interrogatories requesting the identity of all communications that support any of a plaintiff's claims and all related documents. In *CRA Holdings U.S., Inc. v. United States*, the relevant interrogatory sought the identity of employees who worked on certain projects underlying the plaintiff's claims and the activities those employees performed. 2018 WL 4001675, *1 (W.D.N.Y. Aug. 22, 2018). In that context, the court held that pointing the defendant to hundreds of thousands of project-related documents was not a proper response. *See id.* at *2. In *Cathay Pacific Airways, Ltd. v. Fly & See Travel, Inc.*, the plaintiffs sought "the ticket numbers of the airline tickets in issue in" the case and additional information. 1991 WL 156381, at *2 (S.D.N.Y. Aug. 8, 1991). The court held that citation to "an undifferentiated mass" of documents was an improper response to a request for such specific factual information. *Id.* at *3. *Innis Arden Golf Club v. Pitney Bowes, Inc.*, which involved a dispute over a chemical spill at a golf course, addressed interrogatories asking for specific information about the property and the identity of specifically identified documents (e.g., reports on contamination and relevant permits). 2008 WL 11377706 (D. Conn. Mar. 7, 2008); *see* Freeman Ex. 1, *Innis Arden Golf*

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable P. Kevin Castel
May 15, 2026
Page 4

*Club v. Pitney Bowes, Inc.*, No. 3:06-cv-01352 (D. Conn. Dec. 28, 2007), Dkt. 170-4 (containing interrogatories at issue). And in *Ohanian v. Apple Inc.*, a false advertising case, the plaintiff, citing Local Rule 33.3(a), outright refused to answer interrogatories asking specifically for the identity of documents and communications the plaintiff relied on in purchasing the relevant product and which he claimed were misleading. 2022 WL 576314, at *2 (S.D.N.Y. Feb. 25, 2022). The court held only the plaintiff's reliance on Local Rule 33.3(a) was misplaced and he had to provide an answer. *See id.*

Google's Communications Interrogatories, unlike the interrogatories at issue in all of those cases, ask for an undifferentiated list of documents that support any claims and all related documents. And unlike the responses in those cases, Group 1 Premium Publishers responded and provided exactly what the interrogatories expressly asked for. Nothing further is required. *See*, *e.g.*, *Frieri v. Sysco Corp.*, 2017 WL 3387713, at *4 (S.D. Cal. Aug. 4, 2017) ("The Court cannot rewrite the interrogatories . . . [to] compel . . . a response to information not requested or encompassed within the interrogatory"); *Sumrall v. Georgia Dep't of Corr.*, 2022 WL 2155961, at *1 (M.D. Ga. May 24, 2022) ("unhapp[iness] with . . . interrogatory responses does not make them actionable") (cleaned up).

## II.    The Court Should Deny Google's Motion To Compel Further Responses to the Sponsorship Deal Interrogatories

The Court should deny Google's request to compel The Slate Group LLC ("Slate") and Dotdash Meredith Inc. ("People") to supplement their responses to the Sponsorship Deal Interrogatories.[1] Google's Sponsorship Deal Interrogatories ask Slate and People to identify their "'sponsorship' deals from which Enhanced Dynamic Allocation reallocated inventory to AdX, as set forth in . . . [each] Complaint, and identify the terms of each 'sponsorship' deal, the effective dates of each deal, the amount of inventory reallocated to AdX and the date of each reallocation, and the amount paid for the inventory sold through AdX." *See*, *e.g.*, Dkt. 1751-3 at 15. Group 1 Premium Publishers allege that Google's Enhanced Dynamic Allocation ("EDA") allowed Google to take high-value advertising inventory reserved for publishers' direct deals. A "sponsorship" is one kind of direct deal. *E.g.*, Slate Compl. ¶ 155. In their complaints, Group 1 Premium Publishers explained that Google does not provide publishers with "the data necessary to determine for themselves whether Enhanced Dynamic Allocation was in fact beneficial or not." *Id.* ¶ 157. As a result, Group 1 Premium Publishers have "limited ability to determine precisely when and how AdX continues to compete against sponsorships." *Id.* ¶ 159.

---

[1] Google did not serve the Sponsorship Deal Interrogatory on CMI Marketing, Inc. ("Raptive"). And although Google did serve the Sponsorship Deal Interrogatory on Insider, Inc. ("Business Insider") and claimed that Business Insider's response was deficient in correspondence, *see* Dkt. 1756-15, Google's motion challenges (at 6) only Slate's and People's responses.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable P. Kevin Castel
May 15, 2026
Page 5

Consistent with those allegations, Slate's and People's responses to the Sponsorship Deal Interrogatories explained that because Google concealed how EDA functioned and never made available the necessary data or analytics, publishers cannot identify the specific sponsorship deals impacted by EDA. Their responses specifically described how "Google never has made available any data or analytics that would allow [the publisher] to track how AdX competes with direct deals with Enhanced Dynamic Allocation," leaving publishers with "limited ability to determine precisely when and how AdX continues to compete against sponsorships." Dkt. 1756-10 at 26.

Google has superior knowledge regarding how EDA impacted Group 1 Premium Publishers' sponsorship deals. As Slate and People explained in their responses to the Sponsorship Deal Interrogatories, Google analyzed whether EDA was detrimental to publishers' sponsorship deals. For example, one Google employee proposed ███████████████ ██████████████████████ GOOG-AT-MDL-012331771.[2] Google also discussed ████████████ ███████████████████████████████ GOOG-AT-MDL-017580838.

Group 1 Premium Publishers have sought from Google the data they need to determine how EDA harmed their sponsorship deals, but Google has refused to provide it. For example, in their Interrogatory No. 4 to Google, Group 1 Premium Publishers asked Google to identify studies, tests, or analyses concerning EDA's impact on Group 1 Premium Publishers. Google refused to identify those materials specifically and instead gave Plaintiffs a search string to run on the documents in Google's production, which yields "more than 15,000" potentially responsive documents. Dkts. 1757-28 at 1; 1757-29 at 2-4. Google thus seeks to compel Plaintiffs to perform a granular EDA attribution analysis while refusing to identify with specificity the Google documents that would make such an analysis possible. Google cannot withhold information peculiarly in its possession but simultaneously insist that publishers provide, before expert analysis of Google's own internal records, the transaction-level outputs of Google's undisclosed allocation system. *See CRA Holdings*, 2018 WL 4001675, at *4 ("[B]ecause of defendants' inherent understanding of their own projects and plaintiff's reasonable lack thereof," the burden rested on the defendants (cleaned up)).

In all events, Slate and People are not refusing to identify the impacted sponsorship deals. Instead, because determining the impact of EDA on sponsorship deals requires expert analysis of

---

[2] Because this letter references materials protected by the Modified Confidentiality Order, Dkt. No. 685, Group 1 Premium Publishers have filed a redacted version of this letter on the public docket and have not filed certain supporting materials for this letter publicly. They will provide an unredacted version of this letter to Google and the Court under separate cover. If the Court would like to review any of the supporting documentation, Group 1 Premium Publishers will be glad to provide it.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable P. Kevin Castel
May 15, 2026
Page 6

Google's internal data and documents, Slate and People have committed to supplement their responses to the Sponsorship Deals Interrogatories during or at the conclusion of expert discovery. Google cites no authority for requiring Group 1 Premium Publishers to respond now, before expert discovery has commenced. Indeed, courts routinely permit parties to supplement interrogatory responses during or after expert discovery when the information sought requires expert analysis. *See*, *e.g.*, *Hedgeye Risk Mgmt., LLC v. Dale*, 2021 WL 5909137, at *1 (S.D.N.Y. Dec. 10, 2021) (finding interrogatories premature because they "may be informed by expert discovery"); *Equal Rts. Ctr. v. Post Props., Inc.*, 246 F.R.D. 29, 33 (D.D.C. 2007) (proper for plaintiff to respond to interrogatory seeking "all documents that you claim support the allegations set forth in the complaint" by stating that "violations would be detailed in expert reports that were not yet completed").

The Court should deny Google's motion to compel Slate and People to again supplement their responses to the Sponsorship Deal Interrogatories before they have had an opportunity to conduct the expert analysis necessary to provide responsive information.

**III.    Google's Allegations of "Gamesmanship" Are Baseless**

Google's three-page account of the parties' meet-and-confer history is incomplete and misleading. It also continues a long history of Google claiming that Plaintiffs are engaged in "gamesmanship." *See*, *e.g.*, Dkts. 371 at 2; 766 at 4; 811 at 2; 1147 at 19; 1201 at 4; 1360 at 20 n.15. Group 1 Premium Publishers have corresponded with Google in good faith to address Google's objections to their interrogatory responses. Google sent its March 13 deficiency letter on a Friday evening and demanded written confirmation from counsel for four separate Premium Publisher clients by the next business day. Plaintiffs responded that they were reviewing the six-page letter and its dozens of cited documents on behalf of four clients and would respond by the end of the week. Counsel continued to confer with the four Premium Publishers and kept Google apprised of the timing of their response. They then provided a substantive response on March 31, supplemented the Sponsorship Deal responses on April 17, met and conferred on April 29, agreed on May 6 to supplement the Communications Interrogatories, and on May 8 explained both the intended substance of that supplementation and why Google had shown no need for the arbitrary deadline it was demanding. That is not gamesmanship. *See*, *e.g.*, *Rich v. Risk Mgmt. Alts., Inc.*, 2005 WL 8167549, at *2 (D. Conn. May 27, 2005) (denying motion to compel because respondent already committed to "supplement[ing] its responses" and observing such supplementation is permitted by Rule 33(c) until a "pre-trial conference or other later time").

\* \* \* \* \*

For the foregoing reasons, Group 1 Premium Publishers respectfully request that the Court deny Google's motion to compel in its entirety.

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.

The Honorable P. Kevin Castel
May 15, 2026
Page 7

Dated: May 15, 2026

Respectfully submitted,

/s/ *John Thorne*

John Thorne
Daniel G. Bird
Bethan R. Jones
Daniel S. Severson
Christopher C. Goodnow
Eliana Margo Pfeffer
Eric J. Maier
Mark P. Hirschboeck
Rund M. Khayyat
Jonathan I. Liebman
Sven E. Henningson
Jahvonta A. Mason
Reno G. Varghese
Eric X. Xu
Zachary J. Tauscher
Seth D. Crockett
KELLOGG, HANSEN, TODD, FIGEL
  & FREDERICK, P.L.L.C.
1615 M Street NW, Suite 400
Washington, DC 20036
Tel.:  (202) 326-7900
Fax:  (202) 326-7999
Email:  jthorne@kellogghansen.com
        dbird@kellogghansen.com
        bjones@kellogghansen.com
        dseverson@kellogghansen.com
        cgoodnow@kellogghansen.com
        epfeffer@kellogghansen.com
        emaier@kellogghansen.com
        mhirschboeck@kellogghansen.com
        rkhayyat@kellogghansen.com
        jliebman@kellogghansen.com
        shenningson@kellogghansen.com
        jmason@kellogghansen.com
        rvarghese@kellogghansen.com
        exu@kellogghansen.com
        ztauscher@kellogghansen.com
        scrockett@kellogghansen.com

*Counsel for Group 1 Premium Publishers*

cc:  Redacted Copy:  All Counsel of Record via ECF.
     Sealed Copy:  Counsel as indicated in transmission email to Chambers.